UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SIERRA CLUB,
WEST VIRGINIA HIGHLANDS CONSERVATORY,
OHIO VALLEY ENVIRONMENTAL COALITION,
and COAL RIVER MOUNTAIN WATCH,

    Plaintiffs

v.                                        Civil Action No. 2:10-00673

ELK RUN COAL COMPANY, INC.,
INDEPENDENCE COAL COMPANY, INC.,
MARFORK COAL COMPANY, INC.,
PEERLESS EAGLE COAL COMPANY, and
POWER MOUNTAIN COAL COMPANY,

    Defendants

## MEMORANDUM OPINION AND ORDER

Pending is defendants' motion to transfer and/or consolidate this action with <u>Ohio Valley Environmental Coalition, Inc. v. Independence Coal Co., Inc.</u>, No. 3:10-0836 pending at Huntington ("Huntington action"), filed July 14, 2010.

I.

On June 17, 2010, plaintiffs instituted the Huntington action. On April 27, 2010, plaintiffs instituted this action. Plaintiffs in this action seek a declaratory judgment, injunctive relief, and civil penalties against defendants for alleged violations of the Federal Water Pollution Control Act, 33 U.S.C.

§ 1251 et seq. ("the Clean Water Act" or "the CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. (hereinafter "SMCRA").

Specifically, plaintiffs allege that defendants have discharged in the past and on a continuing basis certain pollutants, including aluminum, pH, suspended solids, and iron, into waters of the United States in violation of (1) Section 301 of the Clean Water Act, 33 U.S.C. § 1311, (2) SMCRA performance standards, and (3) the conditions and limitations of seven West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permits previously issued to defendants along with certain surface mining permits.

In the Huntington action the same plaintiffs pursue another Clean Water Act citizen suit against two different Massey Energy Company subsidiaries not named herein. According to defendants, "[t]he only difference between [this action] . . . and [the Huntington action] . . . is that the f[ormer] . . . alleges effluent limitations for parameters other than selenium while the . . . [latter] is limited to alleged violations of selenium limits." (Defs.' Memo. in Supp. at 3-4).

Defendants contend that this action and the Huntington action involve common questions of law and fact, the joint

2

resolution of which will avoid duplicative or potentially inconsistent judgments, along with promoting the efficient use of judicial resources. Defendants also assert that both actions are related to <u>United States v. Massey Energy Co.</u>, No. 2:07-0299, a case once pending before the undersigned but closed by consent decree ("Massey consent decree") on April 9, 2008.[1]

Defendants offer several reasons why transfer and/or consolidation should occur. First, they contend that a threshold issue here and in the Huntington action will be whether the Massey consent decree bars the citizen suits.[2] Second, they note that this case and the Huntington action involve identical plaintiffs, along with defendants that are subsidiaries of Massey Energy Company. Third, they assert that consolidation would not result in prejudice or confusion inasmuch as the facts of the two actions are similar. Fourth, they note that consolidation would serve settled notions of judicial economy and reduce costs and expenses.

---

[1]As noted by defendants, the Massey consent decree contemplated the potential for future violations and remedial action. It provides both penal and injunctive mechanisms, and the court retains jurisdiction to enforce the consent decree.

[2]Defendants appear to suggest that in the event transfer or consolidation are denied that the court should "undertake a consolidated consideration of the effect of the" Massey consent decree. (Defs.' Memo. in Supp. at 4-5). They do not suggest how that type of coordinated treatment ought to occur.

In response, plaintiffs offer several reasons against transfer or consolidation.  One of those reasons is particularly noteworthy:

> The . . . [Huntington] action involves only recent violations of selenium limits.  Th[is action and the Massey consent decree] . . . involve violations of other types of permit limits, primarily iron, TSS, aluminum, pH, and manganese.  The Massey [c]onsent [d]ecree does not mention selenium, and none of the post-decree reports filed by Massey list selenium violations.  That is because Massey did not have any effective selenium limits at the time that the [Massey] [c]onsent [d]ecree was entered on April 9, 2008. In the [Huntington] . . . action, the selenium limits that Plaintiffs now seek to enforce did not become effective until two years later on April 5, 2010. . . .  The [Huntington] . . . action is only seeking to enforce violations of that parameter after that date. Thus, the [Huntington] . . . action raises a different type of claim over a different time period than the two actions with which Defendants' are seeking transfer and/or consolidation.

(Pls.' Resp. at 3).

Plaintiffs additionally note that "[i]n Huntington . . . Judge Chambers has had significant experience overseeing three . . . [Clean Water Act] citizen suits involving selenium violations and selenium remediation," explaining each of the three cases in some detail.  (<u>Id.</u> (noting in one of the three cases that "[a]t least five engineers, two biologists, two chemists[,] an economist, and a forensic accountant will testify as experts in addition to several fact witnesses.  The technical and fact issues in this trial and previous hearings are

substantially the same as those that will be at issue in the instant [Huntington] action."); id. at 5 (noting further that "Judge Chambers . . . has issued two lengthy summary judgment opinions on selenium violations and scheduled over six days of testimony on selenium treatment issues. In contrast, this Court in this Division has not yet been presented with any case involving selenium violations"); see also id. at 1 (stating "Judge Chambers has developed a unique familiarity with the complex facts and technology related to that type of violation in several related cases pending in the Huntington Division.").

    Plaintiffs offer further, abundant detail respecting the differences between selenium and other permit parameters and the unique challenges presented by selenium treatment. They additionally note that, since the filing of the Huntington action, two additional citizen suits involving nearly identical selenium issues were instituted in the Huntington division as well. Plaintiffs also offer persuasive reasons why the Massey consent decree has no particular impact upon the Huntington action, not the least of which is their contention that the Massey consent decree "was not intended to and did not address Defendant's selenium discharges." (Id. at 8).

    In reply, defendants reassert, inter alia, that transfer and/or consolidation "will avoid duplicative litigation,

5

conserve judicial resources, and will not result in undue delay or prejudice in the resolution of the cases." (Defs.' Reply at 2). They additionally assert that the Massey consent decree may be interpreted to cover selenium discharges. They offer little else in the way of argument on the selenium issue, however, beyond stating as follows:

> [S]elenium is the only common factor between [the Huntington action] . . . and the other cases listed by Plaintiffs as "related" in the Huntington Division. How two different companies have responded to limits on discharges of selenium at different mines in different regions provides little basis for contending that cases against Patriot and Massey subsidiaries are connected in any meaningful way.

(Id. at 8).

## II.

Respecting transfer, the court applies 28 U.S.C. § 1404(a), and its accompanying standards, which typically govern interdistrict transfers. Section 1404(a) provides pertinently as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Id. A section 1404(a) transfer is dependent upon the "weigh[ing] . . . [of] a number of case-specific factors." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

"Factors commonly considered in ruling on a transfer motion include: (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice." AFA Enters., Inc. v. American States Ins. Co., 842 F. Supp. 902, 909 (S.D. W. Va. 1994). The plaintiff's forum selection is accorded considerable weight. Id.; Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Respecting the standards governing consolidation, Federal Rule of Civil Procedure 42(a) provides as follows:

> (a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order . . . all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. Proc. 42(a).

The district court is accorded significant discretion on questions arising under Rule 42(a), recognizing the superiority of the trial court in determining how best to structure similar pieces of litigation. See A/S J. Ludwig

**Mowinckles Rederi v. Tidewater Const. Co.**, 559 F.2d 928, 933 (4th Cir. 1977) ("District courts have broad discretion under F.R.Civ.P. 42(a) to consolidate causes pending in the same district.")  Nevertheless, the court of appeals has also provided guidelines for district courts engaging in the discretionary exercise.  See <u>Arnold v. Eastern Air Lines, Inc.</u>, 681 F.2d 186, 193 (4th Cir. 1982):

> The critical question for the district court in the final analysis was whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

<u>Id.</u> at 193.

While the court has considered all of the applicable factors, the interests of justice factor respecting transfer, and the factor addressing the risks of confusion and prejudice as it relates to consolidation, are paramount.  It seems apparent that the judicial officer presiding in the Huntington action has both extensive experience, and significant expertise, in dealing with selenium discharge issues.  It is undisputed that Judge Chambers has devoted significant time and effort to the issue in cases at various stages of development before him, one of which is the Huntington action.  It is also evident, as plaintiffs suggest,

that the factual, scientific, and technical evidence that he has considered in other cases will be in issue again in the Huntington action.  The overriding interests in consistent adjudication, avoidance of duplicative litigation, maximization of judicial and other resources, and apt consideration of plaintiffs' divisional choice overcome the considerations identified by defendants that weigh in favor of transfer and/or consolidation.

The court, accordingly, ORDERS that defendants' motion to transfer and/or consolidate this action with the Huntington action be, and it hereby is, denied.

The Clerk is directed to send a copy of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: October 1, 2010

John T. Copenhaver, Jr.
United States District Judge