UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

SIERRA CLUB,
WEST VIRGINIA HIGHLANDS CONSERVANCY,
OHIO VALLEY ENVIRONMENTAL COALITION,
and COAL RIVER MOUNTAIN WATCH,

      Plaintiffs,

v.                                    Civil Action No. 2:10-cv-00673

ELK RUN COAL COMPANY, INC.,
INDEPENDENCE COAL COMPANY, INC.,
MARFORK COAL COMPANY, INC.,
PEERLESS EAGLE COAL COMPANY, and
POWER MOUNTAIN COAL COMPANY,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is the parties' revised proposed consent decree, filed July 22, 2011.

I.  Background

On April 27, 2010, plaintiffs instituted this action pursuant to the provisions for "citizen suits" found in section 505(a) (33 U.S.C. § 1365(a)) of the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act, and section 520(a) (30 U.S.C. § 1270(a)) of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"). Plaintiffs allege generally that defendants have contravened both the Clean Water

Act and SMCRA by discharging pollutants into the waters of the United States in excess of the limitations set forth in several National Pollutant Discharge Elimination System ("NPDES") permits issued to defendants by the State of West Virginia.  (Id.). Plaintiffs seek civil penalties and a permanent injunction to halt the alleged illegal discharges.  (Id. at 37-38).

On May 11, 2011, the parties lodged a proposed consent decree pursuant to section 505(c) of the Clean Water Act.  That section provides pertinently that

> [n]o consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

33 U.S.C. § 1365(c)(3).  Consistent with the foregoing provision, the parties sent a copy of the proposed consent decree to the United States Department of Justice on May 11, 2011. Accordingly, the 45-day review period provided for in section 505(c) was to conclude on June 27, 2011.

On June 17, 2011, following discussions between the parties and the Department of Justice concerning the May 11 consent decree, the parties submitted a revised consent decree to

2

the Department of Justice.[1]  The reviewing attorney from the
Department of Justice thereafter notified the court's law clerk
that its receipt of the June 17 revised consent decree reset the
45-day review period, such that the review period now concluded
on August 1, 2011.

On July 22, 2011, the parties lodged the revised
consent decree with the court.  That same day, the Department of
Justice notified the court that it has no objection to entry of
the revised consent decree.  Accordingly, the parties request
that the court enter the decree and dismiss this matter.
Inasmuch as the 45-day review period, as calculated by the
Department of Justice, has elapsed, and inasmuch further as the
Department of Justice has alerted the court that it has no
objection to entry of the revised consent decree, the court deems
the revised consent decree ripe for review.

## II.  Governing Standard

The United States Court of Appeals for the Fourth
Circuit has observed that "a consent decree 'has elements of both
judgment and contract,' and is subject to 'judicial approval and

---

[1] The parties did not at that time file or otherwise submit
to the court the June 17 revised consent decree.

3

oversight' generally not present in other private settlements."
<u>Szaller v. American Nat. Red Cross</u>, 293 F.3d 148, 152 (4th Cir.
2002) (quoting <u>Smyth v. Rivero</u>, 282 F.3d 268, 279-80 (4th Cir.
2002)); <u>see</u> <u>also</u> <u>Local No. 93, Int'l Assn. of Firefighters,</u>
<u>AFL-CIO v. Cleveland</u>, 478 U.S. 501, 519 (1986); <u>United States v.</u>
<u>ITT Continental Baking Co.</u>, 420 U.S. 223, 237 n.10 (1975)
(citation omitted); <u>Alexander v. Britt</u>, 89 F.3d 194, 199 (4th
Cir. 1996).

The Fourth Circuit expanded upon this principle in
<u>Smyth</u>, observing that a court is expected, when presented with a
proposed consent decree, to scrutinize the accord and make
certain findings prior to entry:

> Because it is entered as an order of the court, the
> terms of a consent decree must also be examined by the
> court. As Judge Rubin noted in <u>United States v. Miami</u>,
>
> > Because the consent decree does not merely
> > validate a compromise but, by virtue of its
> > injunctive provisions, reaches into the
> > future and has continuing effect, its terms
> > require more careful scrutiny. Even when it
> > affects only the parties, the court should. .
> > . examine it carefully to ascertain not only
> > that it is a fair settlement but also that it
> > does not put the court's sanction on and
> > power behind a decree that violates
> > Constitution, statute, or jurisprudence.
>
> 664 F.2d at 441 (Rubin, J., concurring). In other
> words, a court entering a consent decree must examine
> its terms to ensure they are fair and not unlawful.

Smyth, 282 F.3d at 280.

        The standards governing consideration of a proposed consent decree are elucidated further by United States v. North Carolina, 180 F.3d 574, 581 (4th Cir. 1999):

> In considering whether to enter a proposed consent decree, a district court should [1] be guided by the general principle that settlements are encouraged. Nevertheless, a district court should not blindly accept the terms of a proposed settlement. See Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir.1975). Rather, before entering a consent decree the court must satisfy itself that [2] the agreement "is fair, adequate, and reasonable" and [3] "is not illegal, a product of collusion, or against the public interest." United States v. Colorado, 937 F.2d 505, 509 (10th Cir. 1991). In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case. See Flinn, 528 F.2d at 1172-73. While this assessment does not require the court to conduct "a trial or a rehearsal of the trial," the court must take the necessary steps to ensure that it is able to reach "an informed, just and reasoned decision." Id. (internal quotation marks omitted). In particular, the "court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement." Carson v. American Brands, Inc., 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, Circuit Judge, dissenting), adopted by Carson v. American Brands, Inc., 654 F.2d 300, 301 (4th Cir. 1981) (en banc)(per curiam).

Id. at 581 (emphasis supplied).

### III.  Analysis

As noted in <u>North Carolina</u>, the court accepts the general proposition that settlements are encouraged.  The consideration is especially <u>apropos</u> in this action, which appeared poised to consume a significant amount of time and expense by the parties, including the public fisc, along with a substantial redirection of judicial resources.

Moreover, an examination of the revised proposed consent decree suggests it is fair, adequate, and reasonable. The consent decree first requires defendants to deliver to the United States within 30 days a civil penalty in the amount of $40,000.  (Revised Proposed Consent Decree at 6).  The consent decree further provides for stipulated penalties for future violations of the terms of the proposed consent decree and overages relating to NPDES permits.  (<u>Id.</u> at 9-10).  The decree also provides for a payment of $400,000 to the West Virginia Land Trust in order to fund a Supplemental Environmental Project ("SEP").  (<u>Id.</u> at 7).  The proposed SEP would enable the West Virginia Land Trust, working in partnership with the West Virginia University College of Law's Land Use and Sustainable Development Clinic, to develop a Riparian Area Preservation Project to help identify ecologically significant properties in

6

the watersheds affected by the discharges at issue in this litigation.  Defendants have agreed to submit quarterly reports to counsel for plaintiffs, detailing any discharge in excess of the relevant NPDES permits.  (Id. at 8).  Finally, the consent decree provides that defendants shall pay reasonable costs and attorneys' fees incurred by plaintiff in connection with this civil action.  (Id. at 14).  The parties agree that those costs and fees amount to $76,478.

It is noteworthy that the parties did not reach agreement immediately.  Rather, an amicable resolution was achieved only after extensive litigation concerning the parties' dispositive motions.  For example, several months after plaintiffs initiated this action, defendants moved to dismiss the complaint for lack of subject matter jurisdiction.  Specifically, defendants contended that, pursuant to section 505(b)(1)(B) of the Clean Water Act, plaintiffs' citizen suit was precluded by a separate enforcement action initiated by the United States against several coal companies, including each of the five defendants herein.[2]  By memorandum opinion and order dated

---

[2] Section 505(b)(1)(B) provides, in pertinent part, that "[n]o [citizen suit] may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with [an effluent standard or limitation."  33 U.S.C. § 1365(b)(1)(B).

7

November 23, 2010, the court rejected defendants' contention and denied their motion, finding that the United States had contemplated the possibility of citizen suits against defendants and that its enforcement action did not preclude plaintiffs' citizen suit.  <u>See</u> <u>Sierra Club v. Elk Run Coal Co.</u>, No. 2:10-cv-00673 (S.D. W. Va. Nov. 23, 2010).  The court is thus satisfied that both sides were aggressively litigating the case up to the point they sought to suspend the scheduling order pending further settlement discussions.

Based upon the foregoing, the court finds that the proposed consent decree is fair, adequate, and reasonable.  The court further finds that the accord is neither illegal nor the product of collusion and that it serves the public interest.  In view of these findings, and inasmuch as no person has opposed entry of the consent decree, the court ORDERS as follows:

1.   That the proposed consent decree be, and it hereby is, entered with the court's approval this same date; and

2.   That this action be, and it hereby is, dismissed and stricken from the docket, with the court retaining jurisdiction pursuant to Article XV of the consent decree and any other provision therein contemplating the potential for future action by the court.

8

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: August 8, 2011

John T. Copenhaver, Jr.
United States District Judge

9